IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KING,<br><br>　　　　Defendant. | Case No.  06-cr-00658-CRB-1<br><br>**ORDER GRANTING MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A)** |

Shunnee King ("King") moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Mot. (dkt. 95). King argues that his disproportionately long sentence, his young age at the time of sentencing, his medical conditions, and his rehabilitative efforts present extraordinary and compelling reasons that warrant a reduced sentence to time served. Id. at 1–2. The United States opposes. Opp'n (dkt. 103). For the reasons discussed below, the Court GRANTS King's motion.

I.   **BACKGROUND**

King is forty years old and currently serving a sixty-five-month federal sentence for one count of sex trafficking of a minor. Judgment (dkt. 81) at 1. His federal sentence follows an already-served seventeen-year state sentence, which involved the same course of conduct. Indictment (dkt. 1) at 3–4; Falk Decl. Ex. E (dkt. 94-2) ("Santa Clara County Criminal Complaint").

　　A.   **Convictions and Sentences**

On August 31, 2005, when King was twenty-one years old, he engaged in sex trafficking of a minor. Plea Agreement (dkt. 62) ¶ 2. On April 7, 2006, the Los Gatos Police Department arrested King for this conduct and charged him with various violations

of California law.  Santa Clara County Criminal Complaint at 3–8.  These charges included robbery, mayhem, assault, and procuring/pimping a minor under the age of 16 for prostitution.  Id.  The federal government subsequently indicted King on two counts of sex trafficking of minor under 18 U.S.C. § 1591 and enticement of a minor under 18 U.S.C. § 2425 on September 28, 2006.  Indictment at 4.  All of King's charges pertained to his act of sex trafficking of a minor on August 26, 2005, and his conduct surrounding that incident.  Indictment at 3; see Santa Clara County Criminal Complaint.

Although the state charges were filed first, King's federal case proceeded first.  See Pet. and Writ Of Habeas Corpus Ad Prosequendum and Order (dkt. 4).  In his federal case, King filed a motion to suppress (i) evidence obtained on August 31, 2005; (ii) statements he made on that same day; and (iii) evidence obtained in a subsequent search in December of 2005.  Mot. to Suppress (dkt. 27) at 1.  On May 28, 2008, this Court granted in part and denied in part the motion to suppress.  Order Granting in Part and Den. in Part (dkt. 60) at 1.  King pleaded guilty to one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591 and was sentenced on October 22, 2008 to sixty-five months in federal custody, to be followed by five years of supervised release.  Plea Agreement ¶ 1.

King filed a similar motion to suppress in state court.  Falk Decl. Ex. F (dkt. 94-3) at 2.  On April 29, 2008, the state court granted the motion to suppress the evidence.  Id. at 8.  The state appealed that decision.  Id. at 9.  On December 18, 2008—after his federal sentence was handed down—the state appellate court reversed, denying the motion to suppress.  Id. at 18.  In December of 2010, King pleaded guilty to state charges and was sentenced to seventeen years in state prison.  Falk Decl. Ex. G (dkt. 94-4).

Although King was sentenced in federal court first, he served his state sentence first.  Falk. Decl. Ex. J (dkt. 94-7).  He finished his state sentence and was transferred to federal prison on March 1, 2022.  Id.  His anticipated release date is December 26, 2026.  See https://bop.gov/inmateloc/ (Reg. No. 90349-111).  King's cumulative sentence for his conduct of sex trafficking of a minor on August 31, 2005 is 22.5 years.

### B. Compassionate Release Motion

On December 1, 2022, King filed a letter to the Court and asked that his state and federal sentences run concurrently. Letter (dkt. 84). The Bureau of Prisons also requested guidance from the Court as to how King's federal sentence should run with respect to his state sentence. Falk Decl. Ex. I (dkt. 94-6). On December 8, 2022, the Court held a status conference on the matter. Minute Entry (dkt. 89). Both King and the government conceded that no concurrent time was contemplated at the original federal sentencing because the plea agreement was silent on the issue. Minute Entry (dkt. 93). In addition, the sentencing memoranda indicated that his federal sentence would be consecutive to his state sentence should he be convicted of state charges. Sentencing Memorandum (dkt. 75) at 2 n2. The Court instead invited King to file a compassionate release motion. Minute Entry (dkt. 93).

Pursuant to 18 U.S.C. § 3582(c)(1)(A), King moves for compassionate release on the grounds of his disproportionately long sentence, his young age at the time of the crime, his medical conditions, and the Bureau of Prison's failure to provide adequate medical care. Mot. at 8–16. The United States opposes, arguing that King has not presented extraordinary and compelling reasons for his release because a disproportionately long sentence itself does not warrant compassionate release. Opp'n at 8.

## II. LEGAL STANDARD

Generally, a federal court "'may not modify a term of imprisonment once it has been imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). However, under 18 U.S.C. § 3582(c)(1)(A), courts have the authority to grant compassionate release and reduce a sentence for "extraordinary and compelling" reasons. This is a narrow exception, and "the court's disposition of a compassionate release motion 'is discretionary, not mandatory.'" United States v. Wright, 46 F.4th 938, 944–45 (9th Cir. 2022) (quoting United States v. Jones, 980 F.3d 1098, 1106 (6th Cir. 2020)).

Congress amended § 3582(c)(1)(A) to permit a defendant to petition the court directly for compassionate release through the First Step Act of 2018. Pub. L. No. 115-

3

391, Title VI, sec. 603(b)(1), § 3582, 132 Stat. 5194, 5239 (2018). As amended, a defendant may seek a reduction directly from the court provided they exhaust their administrative remedies. United States v. Keller, 2 F.4th 1278, 1281 (9th Cir. 2021). The defendant must request a reduced sentence from the Bureau of Prisons, and the request must either be denied or exceed a thirty-day period, whichever is earlier, before the court may consider a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Pursuant to 28 U.S.C. § 994(a), the Sentencing Commission recently promulgated Amendments to the Sentencing Guidelines, providing the first guidance for the term "extraordinary and compelling reasons" since the First Step Act was passed.[1] U.S.S.G. § 1B1.13. Effective November 1, 2023, courts are required to abide by this Sentencing Commission policy statement when evaluating a § 3582(c) motion for compassionate release. Id; see Concepcion v. United States, 142 S. Ct. 2389, 2401 (2022).

Courts evaluate three steps upon receiving a motion for compassionate release. They are as follows: (A) whether "extraordinary and compelling reasons warrant" a sentence reduction; (B) whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (C) whether the applicable § 3553(a) sentencing factors support release. 18 U.S.C. § 3582(c)(1)(A); Wright, 46 F.4th 938 at 945. The court "need not evaluate each step" should it properly deny a motion for compassionate release. Keller, 2 F.4th 1278, at 1284.

**III. DISCUSSION**

It is undisputed that King has exhausted his administrative remedies.[2] Falk Decl. Ex. L (dkt. 94-9); Opp'n at 6. The Court will therefore proceed to the three steps of the compassionate release analysis. First, the Court finds that King has presented "extraordinary and compelling reasons." Second, the Court finds that King is not

---

[1] See U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (April 27, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305RF.pdf.
[2] King filed a request with the Warden of USP Atwater on February 15, 2023, and 30 days have passed. Falk Decl. Ex. L. He has exhausted his administrative rights to appeal, and the government does not contest this. Second Falk Decl. (dkt. 97) ¶¶ 1–3; Opp'n at 6.

4

dangerous to the community under the Sentencing Commission's policy statement. Third, the Court finds that the applicable § 3553(a) sentencing factors support King's motion for sentence reduction. Because King has satisfied these three prongs, the Court GRANTS compassionate release.

### A. Extraordinary and Compelling Reasons

Section 1B1.13 lists six circumstances that represent extraordinary and compelling reasons, two of which are relevant to King's motion: (1) King's medical conditions and (2) the residual exception.

#### 1. Medical Conditions

There are three circumstances where a defendant may demonstrate that their medical condition presents an extraordinary and compelling reason. First, the defendant may demonstrate that they suffer from "a serious physical or medical condition" that "substantially diminishes" their ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Second, the defendant may demonstrate that they suffer from a "medical condition that requires long term or specialized care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Id. § 1B1.13(b)(1)(C). Third, the defendant may show that they are housed at a facility "affected or at imminent risk of being affected" by an infectious disease or ongoing health emergency, and "due to personal health risk factors, . . . the defendant is at increased risk of suffering severe medical complications or death as a result of exposure" of the disease. Id. § 1B1.13(b)(1)(D).

King argues that the Bureau of Prison's failure to provide adequate medical treatment for his chronic obstructive sleep apnea by not providing a CPAP machine is an extraordinary and compelling reason warranting sentence reduction. Mot. at 19–22. King also argues that his medical conditions, which include severe obesity, sleep apnea, hypertension, and asthma, increase his risk for developing complications from COVID-19 should he be infected. Mot. at 23. Both arguments fail.

5

### a. CPAP Machine

King does not present evidence that his sleep apnea "substantially diminishes" his ability to "provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1). He also does not present evidence that he is "at risk of serious deterioration in health or death" should he not receive a CPAP machine. Id. § 1B1.13(b)(1)(C). He only asserts that his sleep apnea wakes him up at night "gasping for breath." Falk Decl. Ex. A at 1. Although it is sympathetic that King is unable to get "proper sleep at night," which understandably "bleeds into [his] ability to stay awake" during the day, the BOP's failure to provide King with a CPAP machine to treat his sleep apnea does not present an extraordinary and compelling circumstance for compassionate release. King Decl. ¶ 4.[3]

### b. Heightened Risk of Severe COVID-19 Infection

King's argument regarding his heightened risk of a severe COVID-19 infection also fails. As of January 26, 2023, King has received three doses of the Moderna COVID-19 vaccine. Falk Decl. Ex. D at 2. King's medical conditions of severe obesity, sleep apnea, hypertension, and asthma do increase his risk for severe COVID-19 infection. Mot. at 23–24. However, research overwhelmingly finds that the vaccine is highly effective in reducing hospitalization and death. For example, the Center for Disease Control and Prevention reported that a third mRNA dose prevented 90% of COVID-19 associated hospitalizations during the Omicron-predominated period. Thompson MG, Natarajan K, Irving SA, et. al. Effectiveness of a Third Dose of mRNA Vaccines Against COVID-19, Morbidity and Mortality Weekly Report, Jan. 28, 2022, DOI: http://dx.doi.org/10.15585/mmwr.mm7104e3 (last accessed October 31, 2023). King's increased risk of a severe COVID-19 infection after three doses of the Moderna vaccine therefore does not constitute an extraordinary and compelling reason for release. His risk

---

[3] In general, "[m]any prisons have prohibited the use of CPAP machines in response to the COVID-19 pandemic because of the fear that they create a risk to spread the virus." United States v. Nuzzolilo, 517 F. Supp. 3d 40, 42–43 (D. Mass. 2021) (collecting cases). As such, the lack of a CPAP machine without a "risk of serious deterioration in health or death" is not an extraordinary and compelling reason. U.S.S.G. § 1B1.13(b)(1)(C).

6

of COVID-19 infection does not "substantially diminish" his ability to "provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B); see, e.g., United States v. Tashbook, No. 01-CR-20160-CRB-1, 2023 WL 4769934, at *5 (N.D. Cal. July 25, 2023) (collecting cases).

### 2. Residual Exception

The residual exception provides that a defendant can establish an extraordinary and compelling reason if he presents "any other" circumstances or a combination of circumstances that are "similar in gravity" to the other extraordinary and compelling reasons listed in paragraphs (1)–(4) of § 1B1.13. U.S.S.G § 1B1.13(b)(5).

King argues that his cumulative sentence of nearly twenty-two and a half years is an extraordinary and compelling reason for compassionate release. Mot. at 13–14. King also argues that his young age at the time of sentencing and reforms for young offender sentencing support a reduced sentence.[4] Mot. at 14–19. King's arguments independently may not warrant compassionate release.[5] However, the Court finds that King's rehabilitative efforts and young age at the time of sentencing <u>combined with</u> an extraordinarily long sentence presents an extraordinary and compelling circumstance that is "similar in gravity" to the age of the defendant exception and thus warrants a reduced sentence. U.S.S.G §§ 1B1.13(b)(2), 1B1.13(b)(5).

Courts have held that the combination of a lengthy sentence, commendable rehabilitative efforts, and a young age at the time of the commission of the offense may constitute an extraordinary and compelling reason for compassionate release. See United

---

[4] King also provides an overview of young offender sentencing reforms and young offender scientific literature. Mot. at 13–19. While informative, the reforms and the scientific literature are neither binding nor persuasive to determine whether King has presented extraordinary and compelling circumstances that warrant compassionate release.

[5] The government argues that a disproportionately long sentence on its own is not an extraordinary and compelling reason and it is simply "supposition" that King would not have received the same sentence were he sentenced today. Opp'n at 8–9. Absent other compelling factors, "a disproportionately long sentence is insufficient to warrant compassionate release." United States v. Georgiou, No. CR 09-088, 2021 WL 1122630, at *9 (E.D. Pa. Mar. 23, 2021). However, as discussed infra, King presents additional compelling factors that amount to an extraordinary and compelling circumstance for sentence reduction.

7

States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020) ("[The defendant's] age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction."); United States v. Maumau, 993 F.3d 821, 837 (10th Cir. 2021) ("[A] combination of factors warranted relief, including [the defendant's] young age at the time of sentencing"); United States v. Lopez, No. CR 97-01117 AC-2, 2020 WL 6298061, at *5 (D. Haw. Oct. 27, 2020) (finding that the defendant's "extraordinary rehabilitation," "youth at the time of his offense," lack of criminal record, and minimal disciplinary history were grounds that merit compassionate release); United States v. Crutcher, No. 03-CR-031-TCK, 2021 WL 2827481, at *6 (N.D. Okla. July 7, 2021) ("Considering [the defendant's] conviction at a relatively young age, receiving what amounted to a life sentence, and his rehabilitation efforts, the Court finds extraordinary and compelling circumstances which form the basis for relief.").

      Crutcher, in particular, is instructive here. In Crutcher, the court found that the defendant presented extraordinary and compelling circumstances because he received a lengthy cumulative sentence at a young age and committed himself to rehabilitative efforts. 2021 WL 2827481, at *6. The defendant, who was twenty-four at the time, pleaded guilty to possessing a firearm in relation to a drug trafficking crime and received a sixty-month federal sentence to run consecutively to any other term of imprisonment. Id. at *1. A month after he pleaded guilty in federal court, the defendant was convicted in state court and sentenced to fifty years "for conduct which arose from the same criminal transaction." Id. at *4. The court found that his "lengthy" sentence at a "relatively young age" contributed to the determination for extraordinary and compelling circumstances. Id. at *5–*6. In addition, the court found it significant that the defendant committed himself to rehabilitative efforts while he was incarcerated and maintained relationships with his family, friends, and community. Id. at *5.

      Like Crutcher, King's lengthy federal and state sentences "arose from the same criminal transaction": the act of sex trafficking of a minor. King was young—just twenty-one-years-old—when he was arrested. Plea Agreement ¶ 2. Shortly after he pleaded

8

guilty in federal court, King pleaded guilty in state court and received a cumulative sentence of 22.5 years.  Id. ¶ 1; Falk Decl. Ex. G.  King has spent nearly half of his life incarcerated for his conduct on August 31, 2005, and has served 82% of his sentence.  Plea Agreement ¶¶ 1, 2.  Also like Crutcher, King has demonstrated commendable rehabilitative efforts.  While incarcerated, King completed numerous educational courses.  King Decl. ¶ 7; Falk Decl. Ex. N (dkt. 94-11).  At USP Atwater, King received Certificates of Achievement for Turning Point Modules on Coping, Attitudes, Criminal Thinking, and Mindfulness.  Falk Decl. Ex. N.  King also indicated that in state prison, he was unable to take the courses he wanted to due to his federal detainer classification, but he "did as much as [he] could to better [himself]."  King Decl. ¶ 8.  To the extent that he was able, King has spent his seventeen years in custody rehabilitating himself.

Taken together, King's young age at time of sentencing, lengthy cumulative sentence, minimal criminal history, and rehabilitative efforts demonstrate an extraordinary and compelling reason warranting sentence reduction.  The Court specifically finds that these factors, in combination, are "similar in gravity" to other extraordinary and compelling circumstances listed in § 1B1.13.  The similarity in gravity is most apparent when comparing King's circumstances to the age of the defendant exception.  U.S.S.G. § 1B.13(b)(2).  Under the age of the defendant exception, a court may reduce a defendant's sentence if the defendant (1) is at least 65 years old; (2) is experiencing serious deterioration of physical or mental health due to the aging process; and (3) has served at least ten years or 75% of the term of imprisonment, whichever is less.  Id.  This exception was promulgated in part because older inmates exhibit a very low rate of recidivism compared to younger age groups.  Id. § 1B.13 Amend. 799.

Having served nearly twenty years and 82% of his sentence, King easily satisfies factor three under either criteria.  Plea Agreement ¶¶ 1, 2.  And while King is neither 65 nor experiencing deterioration due to the aging process, he demonstrates comparable considerations: (1) he is already in his forties, after being sentenced at the young age of twenty-one; and (2) he has rehabilitated himself through classes focused on bettering his

9

mental state. See Falk Decl. Ex. N (listing King's completed educational courses, including Attitudes, Criminal Thinking, and Mindfulness). King's age relative to when he was sentenced, and the change in his mental state—that is, bettering himself so he may become a productive member of society—are circumstances on par with factors one and two of § 1B1.13(b)(2).

Given King's time served, current age, age at sentencing, and rehabilitative efforts, his circumstances are "similar in gravity" to the age of the defendant exception provided in § 1B1.13. The Court therefore finds that King has presented an extraordinary and compelling reason for compassionate release.

### B. Dangerousness

Since King has established an extraordinary and compelling reason for a reduced sentence, the next inquiry is whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission requires the Court to find that "the defendant is not a danger to the safety of any other person of the community." U.S.S.G. § 1B1.13(a)(2). The Court concludes that King would not pose a danger to the safety of the community if he were to be released based on his age, rehabilitative efforts while incarcerated, and release plan.

To determine dangerousness, the Court weighs the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13(a)(2). These are as follows: (i) "the nature and circumstances of the offense charged;" (ii) the weight of the evidence against the person;" (iii) the history and characteristics of the person;" and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The nature and circumstances of the offense charged are no doubt very serious. There is also no question about the weight of the evidence against King. Plea Agreement ¶ 2. However, King's history and characteristics, age, rehabilitation, and release plan support the finding that he is "not a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).

King's criminal history prior to his incarceration was not severe. The Presentence Investigation Report indicated that his one prior felony conviction was for Attempting to Evade a Peace Officer. Falk. Decl. Ex. M (dkt. 94-10) ¶ 75 ("PSR"). King's criminal history also includes a juvenile adjudication and a misdemeanor drug sale. Id. As for King's personal history, the PSR also noted that King's childhood lacked parenting and structure. Id. ¶ 77. Both of King's parents had "long-standing substance abuse problems which prevented them from being supportive role models." Id. King was also subject to a "pattern of neglect" by his parents. Id. ¶ 51. For example, King was shot in a drive-by shooting and complained of back pain, but he was "not brought to the doctor's office by a responsible adult." Id. ¶ 77. As a result of these findings, probation recommended that the Court sentence King to a period less than the low end of the guideline range of eighty-four months. Id. Probation articulated that a shorter sentence was "sufficient punishment to impress upon Mr. [King] the seriousness of his conduct, while still offering a level of deterrence and protection to the community." Id.

As previously described, King has committed himself to rehabilitation efforts while incarcerated. King has also repeatedly expressed remorse for his actions. Id. ¶¶ 17, 27; King Decl. ¶ 9. On June 27, 2008, King provided the following written statement: "I accept responsibility for what I did. I am very sorry for what I did. I do not intend to ever contact [the victim] again. I will not have anything to do with her ever. I am very sorry." PSR ¶ 17. This statement was sufficient for a computation adjustment for acceptance of responsibility. Id. ¶ 27. As recently as June 21, 2023, King maintains that he still "definitely [has] a huge amount of remorse about all my prior actions." King Decl. ¶ 9.

Upon release from federal prison, King must serve a five-year period of supervised release. Judgment at 3. King plans to live with and take care of his retired mother in Oakland, CA. King Decl. ¶ 9. King's mother indicated that he has family support in the Oakland area. Probation Resp. (dkt. 101) at 5. King also plans to take classes to operate heavy machinery. King Decl. ¶ 9.

Importantly, the government concedes that King likely does not pose a danger to the

11

1  public. Opp'n at 10. King has served seventeen years in custody, and he is unlikely to
2  reconnect with the same crowd he socialized with before he was imprisoned, regardless of
3  whether his sentenced is reduced. Id. In addition, "his medical conditions and his
4  relatively advanced age also make it less likely that he will recidivate or otherwise
5  endanger the public, particularly if he is confined to his mother's home for the first several
6  years after he is released." Id.

Given King's history, age, rehabilitation, and release plan, the Court finds that he is not a danger to the safety of any other person or to the community.

### C.     18 U.S.C. § 3553(a) Factors

The third prong of the compassionate release analysis asks whether the applicable § 3553(a) sentencing factors support release. The relevant § 3553(a) factors are as follows: (i) the nature and circumstances of the offense and history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (iii) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

The § 3553(a) factors were discussed in depth above and support King's motion for sentence reduction. There is no dispute that King's offense, sex trafficking of a minor, was very serious. However, given his young age at the time of sentencing, seventeen years in custody, rehabilitative efforts, remorse, and lack of apparent dangerousness, the § 3553(a) factors support release.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS King's Motion for Compassionate Release. The Court reduces King's sentence to time served with stringent conditions of specialized release as imposed in his original sentencing hearing and as recommended by his probation officer. Judgment at 3–4; see Probation Resp. This includes: (i) supervised release for a term of five years; (ii) Location Monitoring Program-Home Detention for the duration of his custodial sentence; (iii) the special conditions of supervision imposed in 2008; and (iv) an expanded search condition to Special Condition No. 5 to include

electronic devices and their data.  Judgment at 3–4; Probation Resp. at 3–4.

**IT IS SO ORDERED.**

Dated: November 1, 2023

CHARLES R. BREYER
United States District Judge